NICHOLAS KRAGULAC ET AL. *v.* MIRKO MARICH ET AL.

[No. 20,503. Filed December 19, 1967. Rehearing granted with opinion April 26, 1968. Transfer denied August 22, 1968.]

*John N. Stanton,* of East Chicago, *Nick Stepanovich, David S. Stevens,* and *Stepanovich and Stevens,* of East Chicago, of counsel, for appellants.

*Martin A. Karr,* of East Chicago, for appellees.

BIERLY, J.—This is an appeal from an interlocutory judgment—so designated by the appellee, from the Lake Superior Court, Room 3, in favor of plaintiffs-appellees.

Appellants, defendants below, stated the nature of this action in these words:

"This was an action brought by fourteen (14) members of a church-school congregation against the duly elected officials of the congregation to enjoin the holding of a special congregational election, on a subject concerning church affairs, as proposed and submitted by the duly constituted authorities of the congregation, and to compel an election by the congregation on a different proposition, as proposed by the plaintiffs." (Appellant's brief, pp. 1 & 2).

However, appellees, claimants below, in their Answer Brief, at p. 2, stated the proper and correct nature of this action to be:

"This was a class action instituted by certain members of the Church-School Congregation, for and on behalf of themselves and all of the members of the said Congregation likewise affected and situated under prescribed circumstances, whose civil and property rights were being violated by the then acting officers of the said Congregation who were intent with determination to violate and disobey an ecclesiastical rule and law, and to impose upon the Congregation an election with a ballot of their own choosing, without approval of the Congregation, and in further violating the prescribed mode and method of the terms of the proposed election on the question of unity with or separation from the established hierarchical authority, subservience and jurisdiction. The results of a legal and proper election would determine the true status and intent of the said congregation."

Appellants' and appellees' statements on the issues were accentuated because of the lack of agreement as to the "Nature of the Action."

Appellants assert that the plaintiffs' complaint sought a restraining order without notice against "the holding of the designated election at the time set by church officials;" and further sought "temporary injunction to prevent an election at any time on the ballot proposed and advanced by the church officials and defendants therein."

On the other hand, the plaintiffs alleged that their complaint requested,

(1) "That the defendants be compelled to conduct the voting on the controversy and conflict upon a proper ballot, and in accordance to the ruling as adopted by the membership on December 2, 1963, and in accordance with the By-Laws of the said religious society;"

(2) ". . . and that the defendants be enjoined and restrained, without notice, from holding any voting on the controversy and conflict on the first day of March, 1964" (Tr. Pp. 11 to 21, incl.).

That to the said complaint, the defendants,

". . . filed a Motion for Dissolution of the Restraining Order and Denial of Temporary Injunction, and to said Motion in two (2) paragraphs wherein the issue of property rights of the plaintiffs had been raised."

This cause of action was one in equity. Complaint thereof was entitled a "Complaint For An Injunction." It is alleged that the plaintiffs are members of good standing of the Serbian Orthodox Church-School Congregation of the Great Martyr St. George in East Chicago, Indiana, and they are filing this suit for themselves and other members so situated; that the defendants are officials of said church; that a controversy has arisen within said church as to whether or not the church should break off its ties with the Mother Church and affiliate itself with a new independent organization; that on December 2, 1963, at the church's regular monthly meeting a motion was carried to submit the controversy to the membership for a vote upon the following conditions:

1. That the membership books be frozen and closed as of December 2, 1963, and no further dues to be collected.

2. That the only members who would be eligible to vote on the said controversy and conflict would be the members whose dues were paid up to and including December 2, 1963.

3. That the President appoint a committee of six (6) members, three (3) from each side of the controversy and conflict, to check the membership books of the Religious Society and submit a list of the eligible voters whose dues have been paid up to and including December 2, 1963,

which would qualify those voters to participate in the election of the controversy and conflict.

Plaintiffs assert that the conditions set forth above were in accord with the By-laws of the Church.

It was further contended by plaintiffs that one Nick Kragulac, as President of the Church, without authority took possession of the membership book from the financial secretary, which action contravened the By-laws, and he has since refused to place this membership book at the disposal of the committee in order that it may perform its duty in listing the eligible voters.

Plaintiffs further contend and charge that defendants have ignored the question voted on at the meeting held on December 2, 1963, and that they have successfully solicited former members to pay delinquent dues thereby permitting reinstatement of such delinquent members; that the defendants in some instances have paid the dues of delinquent members in order that such members may be reinstated.

Plaintiffs also charge defendants' motive in refusing to deliver the membership record and financial papers to the designated committee was to prevent the disclosure of late paying members who were ineligible to cast a ballot at the proposed election.

It was further charged by the plaintiffs in rhetorical Paragraph No. 10, that the defendants, without the approval of the membership in good standing, prepared a ballot for submission to the voters reading as follows:

"(1) In accordance with the provisions of Article 3 and Article 7, Subsection 2, of the Resolution of the Church National Assembly August 8, 1963, the Serbian Orthodox Diocese for the United States of America and Canada is hereby declared Completely Autonomous, and as such it will not receive in the future any orders, decisions or decrees from the Patriarch, the Holy Assembly of Bishops and the Synod of the Serbian Orthodox Church in Belgrade, as long as they are unable to act freely and to freely bring

their own decisions, which decisions they now bring under pressure of the Communist regime in Yugoslavia.

"Which shall be so long as Yugo-Slavia is in Communist captivity, and when this captivity ceases, the very same relations between the Diocese and the Serbian Orthodox Patriarchy shall re-establish as they existed before the second World War. In this period, as the only free Diocese, this Serbian Orthodox Diocese for the United States of America and Canada, will serve as a sanctuary for all Orthodox Serbians and their religious establishments in the free world, and at the same time this Diocese will protect the interests of the Mother Church, her heirarchy and her faithful in the enslaved fatherland."

In said rhetorical Paragraph No. 10, plaintiffs charged that defendants without approval stated that the vote upon said proposal set forth above be a "for" or "against," that defendants,

". . . have fraudulently and illegally and without any facts or without probable cause, and without any judicial decision or findings, or determination therefor, labelled the Mother Church as being Communist and being dominated by a Communistic regime in Yugoslavia,"

all of which plaintiffs deny, and charge that it tends to confuse the true issue to be determined in the controversy.

In rhetorical Paragraph No. 11, plaintiffs request that an election be held legally and in accordance to the Constitution and existing By-laws of the Religious Society, and as authorized by the membership in good standing; that plaintiffs suggest the following worded ballot to the court to be submitted at the election, as follows:

"1). For a continued unity with the Serbian Orthodox Church of Yugoslavia and Resolution of the Council of Bishops.

"2). For the Liberty Bill Decision of the Resolutions of the Church of the National Assembly of August 8, 1963."

Plaintiffs assert said proposed ballot would be fair and equitable and would not contain unfounded and untruthful prejudicial statements against either group; that the de-

fendants have decided to hold an election on March 1, 1964, and unless enjoined by the court, they shall carry out their proposed illegal voting contrary to the wishes and desires of a majority of the eligible members, and in direct violation of the ruling of the eligible members, and in direct violation of the ruling of the December 2, 1963, meeting, which was adopted by the members, as well as in violation of the By-laws of the Church.

Finally, plaintiffs assert they have no legal remedies at law and they would suffer a great and irreparable damage and injury to themselves and the church, and that the defendants should be enjoined without notice until they comply with the Rules and By-laws of the Church.

Plaintiffs pray that the defendants be compelled to have the voting done by proper ballot as contemplated at the December 2, 1963, meeting, and the By-laws of the Religious Society, and that a hearing on the temporary injunction be held on March 13, 1964.

The trial court, on February 2, 1964, issued a restraining order forbidding a vote until further order of the court, and set March 2, 1964, as the hearing date on said cause and for application for temporary injunction.

The defendants then filed their Motion for Dissolution of the Restraining Order and Denial of Temporary Injunction. To this plaintiffs filed a reply in two paragraphs.

The court, on June 29, 1965, found for the plaintiffs and rendered consistent judgment thereon.

By this judgment, defendants were enjoined from interfering in any manner from carrying out the procedure adopted at the church meeting on December 2, 1963, and the decree further designated who shall represent both sides in the dispute, and that the committee appointed at the December 2, 1963, meeting shall draw up a list of all eligible voters of the congregation as of December 2, 1963, and that a ballot in two parts shall be drawn up to read as follows:

"1) For continued unity with the Serbian Orthodox Church, its Patriarch and Council of Bishops in Belgrade, Yugoslavia.

"2) Against continued unity with the Serbian Orthodox Church, its Patriarch and its Council of Bishops in Belgrade, Yugoslavia."

Only members who have paid their dues up to and including December 2, 1963, will be entitled to vote.

Following this judgment of the court, defendants filed their motion for a new trial on July 27, 1965. There were 27 specifications contained in said motion, and, in addition, 3 assigned errors. Of these assigned errors, appellants specifically waived the other two assignments and in addition thereto specifications numbered 3, 5, 11, 13, 19, 21, 24, 25, 26 and 27. Of the remaining specifications, several are directed towards constitutional questions. These specifications are numbered 4, 8, 10, 12, 15, 16, 17, 20 and 22. Hence, only 7 specifications are not waived and within our jurisdiction.

Appellants divide their argument in four sections. The first argument centers around the proposition that the decision of the court is "contrary to law because in the proceedings these appellants were denied the fundamentals of due process of law." The only authority appellants cite for this proposition is the Fourteenth Amendment of the Federal Constitution, and Article I, Section 12, of the Constitution of the State of Indiana.

Under the second division, the appellants allege "the decision of the court is contrary to law and being an unconstitutional interference in church and religious matters." Appellants cite three cases as well as constitutional provisions in support of this proposition.

Appellants, under the third division, allege that the decision of the court is not sustained by sufficient evidence.

Under the fourth division appellants allege the decision as being contrary to law and not sustained by sufficient evidence.

In the latter two divisions of argument, there are no citations of authority to support the argument.

Appellees, in their brief contend this appeal is from an interlocutory order or judgment. They contend also that there is a defect of appellant's parties on this appeal inasmuch as the defendants, Grozdanich and Parnisari, were never named in the court below as plaintiffs, and, therefore, as parties defendants should be appellants therein and not parties appellees. Appellees further allege that Kuharich, named as party appellee therein by appellants, had never been a party plaintiff or defendant in the action below.

Appellees then present seven points on which the decision or judgment could be affirmed. Further, appellees point out that their objections to the constitutional questions raised by appellants were that they were not first raised in the trial court.

The appellants also filed another cause of action in this court, the same being entitled: *Nicholas Kragulac, et al.* v. *Lake Superior Court, Room 3,* Fred A. Egan, as Judge of the above named court, Anthony Kuharich, as Commissioner appointed by the Lake Superior Court, Cause #20512. This action was a Petition for an Alternative Writ of Mandate and Prohibition in aid of appellants' jurisdiction, which was granted on January 13, 1966, by this court, prohibiting the holding of an election and giving respondents on or before February 14, 1966, to show cause why the writ should not be made permanent. This court, on August 9, 1966, dissolved the writ. On October 3, 1966, petitioners filed a petition to transfer, which petition was denied on December 6, 1966, by the Supreme Court.

On June 6, 1966, appellees filed a motion to dismiss the case at bar, alleging that the judgment appealed from as nonappealable in that appellants have failed to follow the rules covering interlocutory judgments, and hence the case should be dismissed. Appellees also allege a defect in the parties.

In answer to the motion to dismiss, appellant filed a response and also a motion to reverse. Briefs and counter briefs were filed by the parties.

On the 20th day of October, 1965, plaintiffs filed a verified petition showing the manner and procedure attempted by the plaintiffs to hold the election as ordered by the court on the 20th day of June, 1965, and of the repeated attempts by the defendants, Nicholas Kragulac and the committee, appointed as representing the faction opposing the unity with the Mother Church. The petition closed with the following prayer:

"WHEREFORE plaintiffs pray that a writ issued against the defendant, Nicholas Kragulac, and the members of the committee representing the faction who are against the unity with the Mother Church, to wit: Boro Boljetich, Djoko Bicentyevich and Nikola Trkulja, to show cause why they should not be held in contempt of this court in disobeying the order of this court entered on the 29th day of June, 1965, returnable on the 12th day of November, 1965, at 10:00 A.M., or as soon thereafter as counsel can be heard, and that the court further find that the plaintiffs therein and all of the other members of the congregation who adhere and submit to the higher ecclesiastical of the Mother Church and its Patriarch and its Council of Bishops in Belgrade, Yugoslavia, are the true congregation of the Serbian Orthodox Church School Congregation of the Great Martyr St. George, in East Chicago, Indiana, and that they are entitled to the possession and title of the church property, and that the court enjoin all other persons who are not in accord therewith from interfering with such title, and possession, and for such further orders as the court may deem just and proper in the premises in order to carry out the court's decree as entered on the 29th day of June, 1965, and that a judgment be entered accordingly terminating the issue between the parties herein so that a final and complete judgment may be had in this cause of action."

Upon the basis of the above petition and motion by plaintiffs, the court ordered a writ issued for the defendants named in the petition, returnable on the 12th day of November, 1965, at 10 o'clock A.M., or as soon thereafter as counsel

could be heard, to show cause, if any, that they should not be held in contempt of court for failure to comply with the order of the court entered on June 30, 1965. The court set November 12, 1965, at 10 A.M., as the date for a hearing on said petition.

An appeal bond was filed by the defendants on November 5, 1965, in the sum of $500.

On the 12th day of November, 1965, the defendant, Nicholas Kragulac, filed a verified answer to the rule to show cause, asserting that the committee appointed by the court had not requested of him the production of any records; that the return of the records was to be made following the examination by an accountant, and no such examination had as yet been made; that affiant understood the records were to be returned to the committee when the committee had ordered this done; and that no contempt of court was intended or committed by the respondent.

On the same date, the respondent Nick Kragulac, filed a motion to quash the rule to show cause.

An entry of record on said date of November 12, 1965, at pages 96 and 97 in the transcript, is as follows:

> "*Parties in court in person and by their respective counsels, and suggests to the court that the court approves an agreement that the parties have entered into in connection with the election of Officers and Judgment as of June 29, 1965, by replacing the Committee which has been ordered to hold the election within 30 days, and the said committee has failed to comply with the holding of said election;* that a Commissioner be appointed by the court with the authority to form any actions necessary with the setting of the time and place for the holding of the election heretofore ordered by the court and the appointment of all necessary personnel as reasonably necessary and proper for effecting the carrying out of said election on a sufficient and effective basis.

> "Further, to ask the court to appoint a Certified Public Accountant to examine the books and records of the Great Martyr St. George Serbian Orthodox Church School Congregation of East Chicago, Indiana, for the purpose of determining what representation of the said Church Con-

gregation will be eligible to vote in accordance with the By-Laws and record of said Church and the payment of annual fees due and paid up to and including December 3, 1963, and that upon the completion by the Accountant of his examination of the books and to furnish to the said Commissioner a complete list of said congregation showing the eligible voters and that said Commissioner is to procure and prepare a form of ballot and order the printing of said ballots approximately 2,000 and after the printing of the ballots the Commissioner is to suggest to the court for the court's approval and make arrangements as to the date, time and place of holding the election of the members of the Church Congregation according to the ballots so prepared and agree that the books of the said Church be turned over to the Certified Public Accountant appointed by this court and then returned to the court until further order of this court, or to Olga Parnisari the Financial Secretary or any other officer that the Certified Public Accountant deem necessary to examine any other entry made as to the eligibility of members" (emphasis supplied).

Further, the record shows that on the 16th day of November, 1965, that pursuant to stipulation of the parties made and entered in open court on November 12, 1965, which stipulation was approved by the court on said date, the court appointed Anthony S. Kuharich, as Commissioner to conduct and supervise an election to be held by the membership of the Serbian Orthodox Church School Congregation of the Great Martyr St. George, in East Chicago, Indiana.

Further, the order authorized the commissioner to have printed 2,000 ballots and to have printed thereon the matter expressly stated by the court in its order of June 29, 1965; that the eligibility to vote shall be limited to membership in good standing as of the date of December 2, 1963.

The court also appointed the accounting firm of Swartz, Retson, Lindholm and Kettas, of Gary, Indiana, to examine the books and records to determine the membership of said congregation to vote at such election, a list of whom were to be furnished the commissioner and the attorneys of the respective parties.

The court further charged the commissioner to select the place, giving the day and hours during which the voters may cast their ballots. The commissioner was further authorized to employ such personnel as he deemed necessary to aid and assist him in the performance of his duties as said commissioner. It was further ordered by the court that said commissioner mail a notice of the time and place of such election to each listed eligible member. Finally, the commissioner was ordered to report to the court the actions as such commissioner. Anthony Kuharich accepted his appointment on the 23rd day of November, 1965.

A motion for a new trial was filed on July 27, 1965, which was overruled on the 27th day of September, 1965. The filing and proof of defendants' bill of exceptions was done under date of December 14, 1965. Defendants filed a praecipe for transcript on the 22nd day of December, 1965.

On November 2, 1966, appellees filed certifying procedures had after August 8, 1966, in the trial court, the date of the dissolution of the Alternative Writ of Mandate and Prohibition issued by the Appellate Court on January 13, 1966, in cause #20512.

The trial court, in an entry on November 16, 1965, on being informed by the Clerk of the Appellate Court that the Alternative Writ of Mandate and Prohibition had been dissolved, ordered all counsel of record to be notified to appear before the court at 10:00 o'clock A.M., on August 25, 1966, in order that the court could clarify the order entered by the Appellate Court on November 16, 1965; and on said date plaintiffs appear by counsel while defendants fail to appear by counsel. The court ordered and directed Anthony Kuharich, commissioner, to "proceed with the election of the membership of the Serbian Orthodox Church School Congregation of the Great Martyr St. George of East Chicago," as the court had ordered on November 16, 1965, December 21, 1965, and December 22, 1965.

The court, on August 25, 1966, further ordered the election to be held in a place chosen by the commissioner "upon notice to the eligible members as per an audit" ordered by the court on September 25, 1966, between the hours of 1:00 o'clock P.M., and 6:00 o'clock P.M., that all parties are to be notified and the commissioner directed to take all steps essential to carry out the court's order. That on September 20, 1966, a hearing was held on defendants' motion to dismiss "all past judgment proceedings herein and motion to amend the post judgment of the court heretofore entered on June 29, 1965, herein". Defendant, Nicholas Kragulac, further filed verified objections and exceptions to the auditor's report of eligible and qualified members of the congregation, and further requested a date for a hearing on the exceptions, and that the court set forth the time and manner of notice to be sent to challenged voters and to stay election until full disposition be made to defendants' exceptions.

On the same day the cause was submitted to the trial court on the several motions of the defendants, and likewise the motion of defendant, Nicholas Kragulac, and the court hearing arguments of counsel overruled the separate and several motions of defendants and likewise the motion of defendant Kragulac.

An entry was made by the trial court, setting forth that with parties by counsel present, the commissioner, Anthony Kuharich, made his report on the election held pursuant to the order of the court of June 29, 1965; that of the total of 270 ballots cast, 265 votes were recorded for continuing unity with the Serbian Orthodox Church and its Patriarch and its Council of Bishops of Belgrade, Yugoslavia, that four (4) ballots were cast opposing such unity, and one (1) ballot was unmarked. The commissioner further informed the court that there were 270 eligible members indicated by the church books as of December 2, 1963. The court approved the commissioner's report, ordered the books and records used by the

commissioner impounded in the office of the clerk of the trial court in Crown Point, Indiana. The court further stated it would rule on the report the following day, September 27, 1966. On said date, the court, after the submission of the cause, all evidence and arguments of counsel having been heard, and being duly advised, entered findings as follows:

"(1) That the Commissioner's report filed herein indicates that an overwhelming majority of the Congregation of the Serbian Orthodox Church School Congregation of the Great Martyr St. George in East Chicago, Indiana, who cast ballots at the court ordered election on September 25, 1966, from 1:00 P.M. to 8:00 P.M. of said date, indicated their desire for continued unity with the Serbian Orthodox Church, its Patriarchate and its Council of Bishops in Belgrade, Yugoslavia.

"(2) That the court further finds that defendants, in contravention to the purpose and intent of the order of this court as of December 21, 1965, have attempted by their actions and conduct to defeat a free and equitable determination by the members of the said Church as to whether or not the said Congregation would continue in the Hierarchal and Episcopal structure of the Church and Diocese, or would in fact recognize a schismatic, Bishop Dionisije, who has been defrocked by the Hierarchy of the Serbian Orthodox Church and who further, as the record discloses in the case before this court, acted without authority in the Libertyville proceedings and continue to the hour of this ruling to profess the Episcopal authority and who because of his and their activities must perforce be and constitute a schismatic departure from the tenets of the religious beliefs and practice heretofore followed by the membership of the Congregation of the Serbian Orthodox Church-School Congregation of the Great Martyr St. George in East Chicago, Indiana, its Patriarchate and Council of Bishops in Belgrade, Yugoslavia.

"(3) That the adherents of the said Bishop Dionisije and those who espouse the said Libertyville Resolution have acted without authority since 1963.

"(4) That the defendants, as de facto officers, and those whom they represent have been continuously in control and domination of the Serbian Orthodox Church-School Congregation of the Great Martyr St. George in East Chicago, Indiana, without right and authority.

"(5) That the defendants have in contravention to the Constitution and By-Laws of the said Church exercised control of the said Church without authority, and further without authority sought to impose their will and desires upon a Church long dedicated to the membership, authority and jurisdiction of the Mother Church, its Patriarchate, and Council of Bishops in Belgrade, Yugoslavia.

"(6) That defendants, as de facto officers of the said Congregation, and their associates did contumaciously on the morning of the aforesaid election cause to be inserted in the Hammond Times, a daily newspaper of general circulation in Lake County, Indiana, with a large subscription in the area of East Chicago, Indiana, where said Church Congregation is located, an advertisement in said newspaper designed as a protest of the order of this court and in which by innuendo indicated that the order of Court herein called for an improper exercise of judicial authority, and that the said advertisement quoted an Illinois Appellate Court decision out of context, and also suggested in effect that an appeal pending before the Indiana Appellate Court should have the effects of nullifying former and all orders of this court. That in the said advertisement the defendants did profess spiritual unity and union with the Serbian Orthodox Church, but in fact advocated schism.

"That such activity of the adherents of the Libertyville Resolution, and the present de facto officers of the Church, constituted a boycott and may have been a factor in the number of participants in the election proceeding conducted by the duly appointed Commissioner of this Court for a fair determination of the desires of the membership to continue, or not to continue under the domination of the Libertyville group, or to continue an adherence to the Serbian Orthodox Church, its Patriarchate and Council of Bishops in Belgrade, Yugoslavia.

"(7) That this Court takes judicial notice of Chapter 117, of the Acts of 1955 of the Indiana General Assembly vesting the jurisdiction and authority over the Congregation in this cause under the Patriarchate of Yugoslavia.

"(8) That a reasonable fee, including the costs of the election and services rendered by Anthony S. Kuharich, Commissioner, is in the sum of $655.20 and should be taxed as part of the costs herein.

"(9) That a reasonable fee for the services rendered by the firm of Swartz, Retson, Lindholm & Kettas, Certified

Public Accountants of Gary, Indiana, is in the sum of $750.00, and should be taxed as part of the costs herein."

Consistent judgment was rendered thereon, as follows:

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the defendants herein be, and they are hereby permanently enjoined from further exercising any authority in the religious life and continuity of the Serbian Orthodox Church-School Congregation of the Great Martyr St. George in East Chicago, Indiana, or the Church property of any kind, nature and description in the City of East Chicago, Indiana, and from in any manner interfering with the rights of the membership of the Congregation of said Church to continue its adherence with the Episcopal and Hierarchal authority of the Serbian Orthodox Church, its Patriarchate and Council of Bishops in Belgrade, Yugoslavia.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the court that the said defendants be, and they are hereby permanently enjoined from in any way interfering with the rights of the plaintiffs' membership from full participation in the affairs of the Congregation of said Church, and the duly appointed temporary administrative head of the affairs of the American-Canadian Diocese of the United States and Canada, the Right Reverend Bishop Firmilian, the duly constituted and consecrated Bishop of the Serbian Eastern Orthodox Church, or his duly appointed successor, or successors.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the court that the defendants be, and they are hereby permanently enjoined from further proceeding in the procurement and maintenance of any clergymen not specifically designated by the said temporary administrative head of the American-Canadian Diocese, the Right Reverend Bishop Firmilian, or his successor, or successors, to conduct the spiritual affairs of the said Church as suggested by the By-Laws of the said Church effective as of 1963, and that plaintiffs herein are now and shall be entitled to the possession of the Church, and the real and personal property thereof and to the control of the management thereof and all of the Church properties, real and personal, effective as of September 27, 1966.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that the defendants are hereby ordered to forthwith turn over all of the said Church

property, real and personal, and all books and records of the said Church to the plaintiffs herein, or the duly elected and constituted officers.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that the sum of $655.20 should be paid to Anthony S. Kuharich, Commissioner, for his services rendered, including the costs of the election, and should be taxed as part of the costs herein.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that the sum of $750.00 be paid to the Firm of Swartz, Retson, Lindholm & Kettas, Certified Public Accountants for their services rendered, and should be taxed as part of the costs herein.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that the plaintiffs recover all costs laid out and expended from the defendants and each of them.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that the Court attaches to its judgment herein the following Proviso: THIS JUDGMENT IS EFFECTIVE UPON THE CONTINGENCY THAT THE INDIANA APPELLATE COURT DOES NOT RENDER A DECISION INCONSISTENT WITH OR CONTROVENING THE JUDGMENT HEREIN IN THE CASE NOW PENDING BEFORE THE APPELLATE COURT OF INDIANA IN AN APPEAL NOW PENDING IN SAID CAUSE ENTITLED, *'NICHOLAS KRAGULAC, ET AL.* v. *MIRKO MARICH, ET AL.'*, CAUSE NO. 20503."

The case at bar was submitted to the court by agreement of parties upon the evidence contained in the depositions as to all issues presented by the pleadings. Appellants agreed to the judgment rendered on June 29, 1965, "by instigation, participation, authorization, and consenting to the carrying out of said judgment". In this judgment, provisions were set forth providing for an election of the qualified members of the church.

The charge by appellants that they were required to go to trial before submitting an answer apparently carries little weight, inasmuch as they joined in the stipulations to be

submitted to the court as heretofore pointed out as being shown on pages 96 and 97 of the transcript.

Judge Cooper, in a prevailing opinion in the case of *Sizemore et al.* v. *Public Service Comm.* (1961), 133 Ind. App. 51, 177 N. E. 2d 743, at page 73, said:

> " 'Where parties voluntarily adopt and pursue an unorthodox method of procedure, or agree to some unusual manner in which their rights shall be submitted for determination, they may not be heard to complain, on appeal, that proceedings had in conformity thereto were erroneous. *State ex rel. Cline* v. *Schricker* (1950), 228 Ind. 41, 88 N. E. 2d 746, 89 N. E. 2d 547; *Pokraka et al.* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669; *State ex rel. Reiman* v. *Kimmell* (1937), 212 Ind. 639, 10 N. E. 2d 911.' *McKay* v. *Carstens* (1952), 231 Ind. 252, 256, 108 N. E. 2d 249; see also *State ex rel. Randall et al.* v. *Long, Spl. J., etc. et al.* (1957), 237 Ind. 389, 146 N. E. 2d 243; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185."

In the case of *State ex rel. Cline* v. *Schricker, supra,* the court held that where a party to an action ". . . voluntarily adopts a certain form of procedure or agrees to the manner in which his rights shall be submitted for determination in the trial court, he will not be permitted to complain, on appeal or error, that proceedings held in conformity thereto were erroneous."

Appellants and appellees are poles apart in their contentions as to whether the judgment of the court rendered on the 29th day of June, 1965, was final judgment or an interlocutory order or judgment. Appellants stoutly maintain that said judgment was final judgment. Appellees vigorously dissented to appellants' viewpoint, and quoted Flanagan, Wiltrout & Hamilton, Ind. Trial and Appellate Practice, § 2152, Ch. 41, p. 18, as follows:

> " 'A judgment is not final unless it determines the rights of the parties in the suit on a distinct and definite branch thereof, and reserves no further question or direction for future determination.' "

The trial court apparently considered the judgment under date of June 29, 1965, as in the nature of an interlocutory order. When no successful effort was made to comply with the decree of June 29, 1965, plaintiffs-appellees filed, on October 20, 1965, petition for citation to be issued against defendant, Nicholas Kragulac, and the committee representing the defendants in said decree of June 29, 1965, to show cause why they should not be cited for contempt of court for failure to perform their duties as directed by the court.

On November 12, 1965, defendants named in said citation for contempt filed an answer to said rule to show cause, disclaiming any intent to commit any act chargeable as contempt of court. Defendants further filed a motion to quash rule to show cause. The record is silent as to any action taken by the court on the petition by plaintiffs to show cause, or on the answer of defendants or on the motion to quash the rule to show cause.

The record discloses that on November 12, 1965, stipulations were agreed upon by *all parties* and filed. On November 16, 1965, the court, using the stipulations as a basis, entered an order and decree, the details of which are shown and are pointed out heretofore in this opinion.

The record further shows that an election had been held in compliance with the order and decree of the court, and that a report of said election was made by the commissioner to the court on the 26th day of September, 1966, and which report was passed on and approved by the court on the 27th day of September, 1966. Said findings and judgment are incorporated in full heretofore in this opinion.

The proceedings in this cause were begun by filing the transcript and assignment of errors on the 26th day of December, 1965, and the ramifications thereafter were varied and time consuming.

Repeated charges were made by appellants that any matters concerning church dogma and discipline were outside the

jurisdiction of the courts. As a matter of general principle, this allegation may be true. Yet, where warring factions become embroiled in such divergent views, and added to this, the great value of church property and the control of same, necessitated arbitration of a compelling nature which only the civil court appeared as a tribunal with authority to determine order out of chaos.

We are of the opinion that appellants have not established reversible error, and hence the judgment of the trial court should be affirmed.

Judgment affirmed.

Carson, C. J., and Prime, J., concur.

Cook P. J., and Pfaff, J., dissent.

Cooper, Faulconer and Smith, JJ., not participating.

ON PETITION FOR REHEARING

Cook, P. J.—A former opinion of this court affirmed a judgment for appellees and against appellants, *Kragulac et al.* v. *Marich, et al.*, 12 Ind. Dec. 226, 231 N. E. 2d 842 (December 19, 1967).

Appellants have filed and presented a timely petition for rehearing. Judge Bierly has indicated that he will dissent to this opinion because he believes appellants' petition for rehearing does not comply with Supreme Court Rule 2-22. The errors of law in this proceeding are so patent I would grant a rehearing on this court's own motion.

However, I am not in the least misled by the form of the application for a rehearing. Nor do I believe that the petition, as prepared and presented, is violative of Supreme Court Rule 2-22. Appellants' petition states clearly and concisely eight separately numbered reasons why the decision of this court is believed to be erroneous. The petition is signed by appellants' counsel, as required. Following eight succinctly stated reasons for rehearing, appellants reinforced the grounds relied upon by references to the transcript of the record in relation to the former opinion and decision of this court, which was

neither concise nor correct. Appellants filed a *separate* brief, as suggested by Rule 2-22.

I do not intend to close my eyes to matters which are evident and thus permit the errors in this proceeding to go unchallenged. It is only necessary to examine two of the reasons submitted in appellants' petition for rehearing, namely:

"5. The Court erred in failing to give a statement in writing and in failing to give a decision thereof of a substantial question arising on the record and presented by appellants' brief, towit: as to whether the trial court erred in entering judgment in a cause without submission, pleadings, trial or evidence."

"8. The court erred in not holding that all of the proceedings in the trial court after December 26, 1965, the date of the filing of the transcript in this court, were illegal and void, as having been made without jurisdiction."

It should be remembered that the cause of action in this court is an appeal from a final judgment of the Lake Superior Court, rendered on *June 29, 1965.* By timely steps, appellants filed a motion for new trial (containing statutory grounds) which was overruled; signed a praecipe for a transcript of the entire record for appeal to this court; submitted to the trial court an appeal bond, which the trial court approved on November 5, 1965; and filed their assignment of errors and transcript of the record with the Clerk of this court on December 24, 1965.

The judgment of the trial court which the former opinion and decision affirmed was rendered in this cause on *September 27, 1966,* which was approximately nine months after the transcript of the record and assignment of errors were filed in this court. The former opinion states: "The trial court apparently considered the judgment under date of *June 29, 1965,* as in the nature of an interlocutory order." If this court believed that the *June 29, 1965,* judgment was an interlocutory order, appellees' motion to dismiss this appeal filed in this court on June 16, 1966, and the entire

cause on appeal, should have been transferred to the Supreme Court pursuant to Supreme Court Rule 2-41, because this court does not have jurisdiction of appeals from interlocutory orders. Burns' Ind. Stat. Anno. § 2-3218.

Instead, this court held appellees' motion to dismiss this appeal in abeyance by its order of August 22, 1966, and no ruling on this issue was ever made except by implication by the former opinion which affirmed the later invalid judgment in this cause.

The judgment of *June 29, 1965*, which is the judgment appealed from, is clearly a final judgment. Appellees' complaint alleged that a dispute existed between appellees' faction and appellants' faction as members of the Serbian Orthodox Church-School Congregation in East Chicago, Indiana, in respect of qualifications for voting at the election of members of the church board, the conduct of the election, and as to matters of church dogma and affiliation. The prayer of the complaint asked that appellants be restrained without notice, from voting on "the controversy" on March 1, 1964. This relief was granted by the trial court. The prayer of appellees' complaint also asked that appellants be compelled to conduct voting on "the controversy upon proper ballot." That is to say, upon a ballot approved by appellees. By its judgment of June 29, 1965, the trial court granted all the relief prayed for in appellees' complaint, reserving no further matters for future determination. This was a final, appealable judgment.

The question then arises: How did the void judgment of *September 26, 1966*, which is set out verbatim in this court's former opinion, and which was affirmed, come before this court, and why was it given any consideration? The former opinion merely states, "On November 2, 1966, appellees filed certifying procedures had after August 8, 1966, in the trial court." This is not only incredible, but procedurally impossible. Any proper matter omitted from the

transcript of the record prior to certification of the transcript on appeal could be brought to this court only by a verified application for certiorari, in accordance with Supreme Court Rule 2-28. This was not done, nor would such an application have been granted if a full disclosure had been made as required by Rule 2-28.

The so-called "certifying procedures" filed by appellees on November 2, 1966, which included the trial court's purported judgment dated *September 26, 1966*, do not have any standing in this court. The state of the record cannot be improved, nor can such invalid judgment be validated, but it is noteworthy that appellees did not serve such "certifying procedures" upon appellants prior to filing here or later, which violates Supreme Court Rules 2-13 and 2-15A, and constitutes a sort of appeal by ambush without cross errors. It shouldn't be necessary to discuss the principle at length, but doubtless it should be re-emphasized that an appeal does remove the entire cause to the Appellate Court and deprives the trial court of any further jurisdiction over the matter. This may occur in several ways, but it is conclusive that the trial court loses its jurisdiction after an appeal has been perfected by the filing of an assignment of errors and a transcript of the record in the reviewing court. *Indianapolis Life Ins. Co.* v. *Lundquist* (1944), 222 Ind. 359, 53 N. E. 2d 338; *Hill* v. *Lincoln National Bank and Trust Co.* (1938), 214 Ind. 451, 15 N. E. 2d 1019; *Helms* v. *Cook* (1915), 58 Ind. App. 259, 108 N. E. 147.

Recently, under circumstances identical to those presented in this appeal, Judge Jackson, in *Lake Co. Dept. of Welfare* v. *Roth* (1961), 241 Ind. 603, 605, 174 N. E. 2d 335, said:

"The situation presented by the present state of the record is unique to say the least. This court has previously held that the appeal removes the entire cause to the higher court and deprives the trial court of any further jurisdiction over the action. (citing cases) It therefore follows that the attempted action in the court below is wholly and utterly void."

Appellants in their motion for a new trial, assignment of errors and briefs filed in this court, specify and argue that the trial court deprived them of a trial on the merits raised by appellees-plaintiffs' complaint. Appellants assert the judgment of the trial court under date of June 29, 1965, was rendered without giving appellants an opportunity to file an answer to appellees' complaint and submit the issues to trial.

I believe appellants' contention of error is well taken. It is apparent that the former opinion did not give a decision on this issue. Instead, the former opinion states: "The case at bar was submitted to the court by agreement of the parties upon the evidence contained in the depositions as to all issues presented by the pleadings." The opinion, quoting from appellees' brief, also states: "Appellants agreed to the judgment rendered on *June 29, 1965,* 'by instigation, participation, authorization, and consenting to the carrying out of said judgment'". The former opinion then states: "The charge by appellants that they were required to go to trial before submitting an answer apparently carries little weight, inasmuch as they joined in the stipulations to be submitted to the court as heretofore pointed out as being shown on pages 96 and 97 of the transcript." The *ex parte* entry to which the former opinion refers was apparently entered by the trial judge on November 12, 1965, in the following language: "Parties in court in person and by their respective counsels, and suggest to the court that the court approves an agreement that the parties have entered into in connection with the election of officers and *judgment* as of June 29, 1965. . ." The only recorded judicial event which occurred on June 29, 1965, was the surprise entering of the final judgment appealed from in this case. The record does not disclose any agreement by appellants to the entering of such judgment. In fact, the entire record is to the contrary. Soon after the June 29 judgment appellants filed their motion for a new trial which was overruled and as heretofore mentioned the trial judge ap-

proved appellants' appeal bond on November 5, 1965, just one week before making the confused and ambiguous entry of November 12, 1965. It is a strange and unusual anomaly for the trial court to approve an appeal bond and thereafter continue to make orders, entries, citations for contempt and engage in other proceedings wholly inconsistent with the law and the rights of appellants. Supreme Court Rule 2-3 provides, in part, "enforcement of a judgment or appealable interlocutory order, however, will be suspended during an appeal upon the giving of an adequate appeal bond with approved sureties." I believe it is well settled that when an appeal bond is approved by the trial court the stay of execution issues as a matter of course, and the stay is not a matter upon which the trial court may exercise discretion. *State ex rel. Hawthorne* v. *Pefley, Judge* (1948), 226 Ind. 353, 80 N. E. 2d 110. Appellants have been deprived of due process, guaranteed by the Federal Constitution and the Constitution of the State of Indiana, which requires a trial conforming to the fundamental concepts of justice, which certainly are not present in this case. *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 34 N. E. 2d 129.

The appellants did everything possible to advise the trial court of the necessity as a matter of right to a trial on the merits prior to the entering of the judgment of June 29, 1965. Actually, the only hearing ever had in this cause in the trial court was one which began on March 2, 1964, only four days after the filing of appellees' complaint and twenty-eight days before the return date on the summons. At that time *appellees'* counsel advised the trial court that "This hearing is strictly on the issues of a temporary injunction . . . for the reason that anything else in this complaint is not an issue at this time." At that time appellees' complaint was received into evidence and defendants filed their motion to dissolve the restraining order and motion to deny a temporary injunction. Time was given by the trial court to the parties to take depositions on the issue of the temporary injunction.

Before the judgment of June 29, 1965, counsel for appellants again and again reminded the trial court that the only present issue concerned the dissolving of the restraining order and the objections to the issuance of a temporary injunction. Nevertheless, the trial court, before entering the judgment of June 29, 1965, stated "I am ready to proceed on the injunctive relief sought by the plaintiffs in this case, the answer thereto, and the reply to that answer." The final judgment appealed from was then entered, notwithstanding there was no answer to appellees' complaint, and no reply by appellants, and no trial on the main issues.

Appellants' petition for rehearing is granted. The judgment entered September 27, 1966, is void. We also declare void all actions of the trial court taken in this cause on and after December 24, 1965. Appellees' motion to dismiss this appeal is denied. The judgment dated June 29, 1965 is reversed with instructions to the trial court to permit appellants to file appropriate pleadings to appellees' complaint, and for further proceedings not inconsistent with this opinion. This opinion supercedes *Kragulac, et al.* v. *Marich, et al.* (December 19, 1967) 12 Ind. Dec. 226, 231 N. E. 2d 842.

Carson, C. J. and Pfaff, J., concur; Bierly, J., dissents with opinion and Prime, J., concurs in dissent; Cooper, Faulconer and Smith, JJ., did not participate.

## DISSENT ON THE GRANTING
## OF PETITION FOR REHEARING

BIERLY, J.—Appellant filed, on January 5, 1968, what is entitled "Appellants' Petition for Rehearing," and "Appellants' Brief in Support of Appellants' Petition for Rehearing." The petition contains sixteen (16) legal size pages and signed by counsel, whereas the brief contains three (3) regular 8-1/2"x11" size pages, and unsigned. Of the sixteen (16) pages in the petition, no less than thirteen (13) of these pages are devoted to argument.

Under Rule 2-22 of the Supreme Court,

"Application for a rehearing of any cause shall be made by petition, *separate from* the briefs. . ." (emphasis supplied).

It has been held that petitions for rehearing must conform to this Rule, and cannot be argumentative. *Hedgecoth* v. *Hedgecoth* (1966), 139 Ind. App. 162, 216 N. E. 2d 358.

It has also been held that the Supreme Court Rules have the force of law and will be impartially applied in each case. *Hedgecoth* v. *Hedgecoth, supra,* and cases cited therein.

We have no alternative but to apply the Rule and deny appellants' petition for rehearing.

Prime, J., concurs.

NOTE.—Reported in 231 N. E. 2d 842. Rehearing Opinion Reported in 236 N. E. 2d 58.